UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROBERT E., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 19-628WES |
| : | |
| ANDREW M. SAUL, : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On June 15, 2017, Plaintiff Robert E. applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). Alleging an amended onset date of May 27, 2015,[1] Plaintiff contends that the Administrative Law Judge ("ALJ") erred in stopping the analysis of his serious mental health impairments at Step Two in reliance on the prior administrative medical findings of the state agency ("SA") file-reviewing psychiatrist and psychologists.[2] He also asks the Court to ignore as mere dicta the ALJ's alternative residual functional capacity ("RFC")[3] analysis that is buried in a footnote and based on assumed limitations. Defendant Andrew M. Saul ("Defendant") has moved for an order affirming the Commissioner's decision.

---

[1] Plaintiff's application alleged May 27, 2016, as the date of onset when he stopped work. At the second ALJ hearing, held on January 24, 2019, his new attorney explained that 2016 was a "miscommunication, or a clerical error," in that he stopped working on May 27, 2015, and that the medical record was adequately developed to cover the additional year. Tr. 22-23. At Plaintiff's request, the ALJ accepted the amendment and adjudicated the case based on the amended onset date.

[2] At the initial phase, the file was reviewed by a psychologist; when additional records were submitted, a psychiatrist reviewed them and submitted a further opinion for the initial phase. A second psychologist reviewed the file at reconsideration.

[3] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entirety of the record, I find that the ALJ erred in relying on the SA experts. Because of the last minute amendment of Plaintiff's onset date, the SA psychiatrist and psychologists did not consider the medical evidence from May 2015 to May 2016, when Plaintiff stopped work based on medical advice, was placed on temporary disability insurance, and was twice referred for partial hospitalization. And because their analysis was completed in January 2018, the SA psychiatrist and psychologists also did not consider over two-hundred pages of medical records from 2018 that contain indications of worsening. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be DENIED.

## I.     Background

For many years, Plaintiff worked as a manufacturing production supervisor; in his last job before he stopped working, he was responsible for supervising up to sixty workers. In the spring of 2015, at the age of forty-six, he was going through a divorce, parenting teenage daughters with autism, and facing stress, including performance criticism, at work. Tr. 510. As he dealt with these challenges in the present, he also was beginning to address the emotional fallout from having been adopted by a military family that abused and neglected him and from the recent reunification with his birth mother, who had moved from Montana to live with him.

On May 27, 2015, on advice from his primary care provider, Plaintiff took a medical leave from his job due to anxiety and depression and began collecting temporary disability benefits. Tr. 430-35. On June 2, 2015, Plaintiff was assessed for treatment and found to be suffering from anxiety due to life issues; his mental status examination ("MSE") was

significantly abnormal, including difficulty concentrating, sadness and anxiety. Tr. 417-18. Plaintiff began counseling at Rhode Island Hospital with a licensed social worker. After three sessions, he was referred to the partial hospitalization program ("PHP") at Rhode Island Hospital, which he attended for several weeks during July and then returned in August when symptoms recurred. Tr. 640-73, 746-48. His diagnoses included depression, anxiety, and post-traumatic stress disorder ("PTSD"). At the second discharge, on September 1, 2015, his MSE was "better"; but Dr. Lucille Mehring recommended the continuation of medication and individual and group therapy. Tr. 747.

There is a gap in the treating record from September 2015 until May 2016, when Plaintiff resumed treatment with his primary care provider and counseling with the licensed social worker. Treating notes from July 2016 suggest that he was still on leave from work – "has been OOW for stress, anxiety and depression." Tr. 430. In September 2016 (apparently on a referral by the social worker), Plaintiff began treating with a psychiatrist, Dr. Anthony Gallo, who referred him to a psychologist, Dr. Jeffrey Wincze, both with the Lifespan Physician Group. From intake in September 2016, Plaintiff regularly saw both Dr. Gallo (every few months) and Dr. Wincze (for weekly or biweekly counseling sessions) until the end of the period in issue in early 2019. At every session, each performed an MSE. In addition to counseling by Dr. Wincze, Plaintiff's treatment included medication prescribed by Dr. Gallo.

During 2016 and 2017, Dr. Wincze's MSEs feature mostly normal observations, except for Plaintiff's mood, which was sometimes "sad," sometimes "anxious," sometimes "drained," sometimes "okay," sometimes "depressed," sometimes "down," and sometimes "good." Tr. 439-504, 622-30, 677-88. These notes reflect Plaintiff's struggles with a turbulent relationship with his birth mother, somewhat dysfunctional relationships with women as he began dating, his plan

3

to attend a convention, his going out to clubs, and his weekly pool playing with friends, but also an incident of "dissociation" in a grocery store, persistent insomnia and GAF scores that ranged from 45 to 55.[4]  During this period, Dr. Wincze consistently observed that Plaintiff's attention and concentration were "[d]evelopmentally appropriate."  E.g., Tr. 454.  During the same period, Dr. Gallo's MSE observations are similar – mostly abnormal mood, with other metrics largely normal.  Tr. 550-85.  Dr. Gallo increased medication and recommended that Plaintiff continue with Dr. Wincze.  Tr. 553.  His notes from this period reflect insomnia, nightmares, and sometimes decreased energy and appetite.  E.g., Tr. 551.

The SA psychiatrist and psychologists carefully reviewed the foregoing records, but only for the period then in issue ("since the AOD"), beginning on May 27, 2016.  Tr. 196, 203, 211.  They focused on the Gallo/Wincze notes and MSEs from 2017, which they describe (accurately) as reflecting only mood abnormalities, with other metrics (such as attention/concentration) unexceptional; their opinions specifically focus on these largely normal MSEs.  Tr. 196, 204, 215.  The detailed fact analysis by the SA psychologist at the initial phase emphasizes:

> [S]ince the AOD there is a very good longitudinal record provided by the clmt's treating psychologist [that] . . . documents that clmt essentially experienced a decrease in sxs with leaving his stressful job and intensifying treatment. . . .  The record indicates that he experienced one panic episode and dissociative episode over an 11 month period.  Otherwise, his mental status exams were consistently within limits with only mild variations in his mood.

Tr. 196-97.  All three of these experts concurred – based on their review of the then-pertinent portion of the record, they found that Plaintiff suffered from mild, non-severe impairments.  Tr.

---

[4] The use of the Global Assessment of Functioning ("GAF") score was abandoned by the "[2013] update of the DSM[, which] eliminated the GAF scale because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"  See Morey v. Colvin, C.A. No. 14-433M, 2015 WL 9855873, at *2 n.2 (D.R.I. Oct. 5, 2015), adopted, 2016 WL 224104 (D.R.I. Jan. 19, 2016).  However, adjudicators may consider such scores when, as here, they appear in a medical record.  Id.  The GAF scores that Dr. Wincze consistently assigned for Plaintiff reflect moderate to serious symptoms or impairments.  See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 32–34 (4th ed. 2000) ("DSM–IV–TR").  In January 2019, Dr. Gallo included GAF scores in his opinion; these also fall into the range of moderate to severe.  Tr. 853.

198, 203; see Tr. 215 ("Mood, anxiety and trauma-related symptoms have been stable with treatment.  Functional impairments are considered mild.  Psychiatric impairments are not considered severe.").

Treatment with Dr. Wincze and Dr. Gallo continued after the SA file review.  Beginning in mid-February 2018 and at a significant number of the appointments that followed, through the end of 2018, Dr. Wincze began to make MSE observations of "poor" concentration.  See, e.g., Tr. 700, 704, 706, 720, 722, 737, 757, 775, 778, 782, 791, 794, 800, 812, 814, 816, 822, 824.  Dr. Gallo's treating notes (from February 27 and August 28, 2018) are consistent in that they include the notation in "interval history" that depression, anxiety and PTSD are "all worse."  Tr. 847, 850.

Dr. Wincze and Dr. Gallo both submitted RFC opinions.  On August 16, 2018, Dr. Wincze wrote a letter in which he opined that Plaintiff experiences "unremitting anxiety and panic attacks," which would make it difficult for him to function, including that he cannot predictably be around others as is required in the workforce.  Tr. 745.  On January 9, 2019, Dr. Gallo completed a form in which he opined that Plaintiff's prognosis was "guarded" and that Plaintiff suffered from a wide array of psychiatric symptoms, which cause serious limitations, including that distraction would adversely affect his ability to work.  Tr. 853-58.

The ALJ's decision finds persuasive and relies on the findings of the SA psychiatrist and psychologists; based on their findings, it stops the analysis at Step Two, concluding that none of Plaintiff's impairments were sufficiently severe as to "significantly limit[] his . . . ability to perform basic work activities."  Tr. 230.  It rejects the opinions of Dr. Wincze and Dr. as unpersuasive and unsupported because Plaintiff "has exhibited no deficits on mental status examinations and has not required crisis intervention or hospital admission."  Id.  In a brief

5

footnote that the Commissioner concedes is "dicta," the ALJ added an alternative decision. In the footnote, the ALJ assumed that Plaintiff's impairments are severe for Step Two purposes, but that he retains the RFC to do unskilled work with limited social interaction and simple/routine workplace changes. Based on this assumption, and the answer to a hypothetical directed to the vocational expert at the hearing, the ALJ concluded that Plaintiff would still not be disabled if this alternative approach turns out to be more correct. Tr. 231 n.4.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does

not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

### III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[5]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A. The Five-Step Evaluation

---

[5] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite to one set of regulations only.

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c).

### B. Step Two Determination

An impairment is "not severe" at Step Two if the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work.  SSR 85-28 at *2, 1985 WL 56856 (Jan. 1, 1985).  As the First Circuit has long held, Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment."

McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1122 (1st Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom., Burge v. Berryhill, C.A. No. 15-279 S, 2017 WL 435753 (D.R.I. Feb. 1, 2017).  Further, if there is error at Step Two, but the sequential analysis continues because of another severe impairment, the error is generally deemed harmless.  White v. Colvin, No. CA 14-171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015); see Syms v. Astrue, Civil No. 10-cv-499-JD, 2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011) ("[A]n error at Step Two will result in reversible error only if the ALJ concluded the decision at Step Two, finding no severe impairment.") (collecting cases).  Thus, as long as the ALJ's RFC analysis is performed in reliance on the opinions of state agency reviewing experts or treating sources who considered the functional impact of the impairment in question, there is no material error in failing to include it as a severe impairment at Step Two.  Evans v. Astrue, No. CA 11–146S, 2012 WL 4482366, at *4-6 (D.R.I. Aug. 23, 2012) (no error in ignoring diagnosis of antisocial personality disorder at Step Two where ALJ relied on medical expert's testimony regarding resulting limitations).

        C.      **Opinion Evidence**

For applications like this one, filed after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence.  The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  20 C.F.R. § 404.1520c(a).  Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  Id.  Rather, an ALJ must consider the persuasiveness of all medical opinions

9

in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).

**IV.     Analysis**

The ALJ's decision transgresses the well-settled proposition that the SA experts' administrative medical findings do not amount to substantial evidence when "the state-agency physicians were not privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions."  Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020), adopted, C.A. No. 1:19-CV-00119-MSM-PAS, 2020 WL 555186 (D.R.I. Feb. 4, 2020) (quoting Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)) (alterations in original); see Sandra C. v. Saul, C.A. No. 18-375JJM, 2019 WL 4127363, at *6 (D.R.I. Aug. 30, 2019) ("Remand is necessary to allow for an error-free evaluation of the complete record.").  As Virgen C. makes clear, an ALJ cannot rely on a file review opinion if the SA expert did not consider materials, such as post-review developments, which reflect a significant worsening of the claimant's condition because such an opinion does not amount to substantial evidence.  2018 WL 4693954, at *3 ("[I]f a state-agency physician reviews only a partial record, her 'opinion cannot provide substantial evidence to support [an] ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations.'") (citing Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018)) (second alteration in original).  This fundamental proposition is not altered by the new regulations that empower the ALJ to "consider

whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5).

Here, the SA experts looked only at the 2016 and 2017 treating records and accurately summarized them as reflecting no issues with attention, largely normal MSEs except for mood and no hospitalizations. They ignored – appropriately, because the 2015 files were from what was then the pre-onset period – the 2015 records, which reflect back-to-back partial hospitalizations and seriously abnormal MSE observations. They did not see the 2018 treating notes that reflect not just worsening (as Dr. Gallo observed), but also "poor" attention, a new and persistent adverse MSE finding that had been absent from the 2017 MSEs, as the SA experts specifically noted. See Tr. 196, 204, 215. These 2018 treating notes plainly contain "indications of worsening," making it impossible for the Court to know whether the SA experts would have rendered the same Step Two opinions if they had seen them. Their omission from consideration requires remand for medical interpretation of them and reassessment of the severity of Plaintiff's impairments in light of them. Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *5-6 (D.R.I. May 4, 2020), adopted by Text Order, (D.R.I. June 5, 2020) (citing Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) ("Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion.")); see Sandra C., 2019 WL 4127363, at *6 ("It is well settled that remand is required when an ALJ relies on an RFC . . . opined to by an SSA non-examining source who lacked access to records reflecting a material worsening of symptoms.") (citing Mary K v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018) ("[c]ourt does not know whether the non-

11

examining state agency physicians would have rendered the same Step 2 opinions if they had all of the medical evidence")).

This case differs markedly from Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655 (D.R.I. Nov. 22, 2019), in which the Court found that the ALJ carefully reviewed the post-file-review evidence and correctly came to the common-sense conclusion that there was no evidence to establish "the requisite worsening." 2019 WL 6242655, at *8. In that circumstance, to render an SSA opinion irrelevant merely because the expert was not privy to all of the medical records "would defy logic and be a formula for paralysis." Id. at *7 (citing Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993)). Here, however, the ALJ did not even consider the post-file-review evidence, nor does his decision address the impact of the change in the onset date on the SA findings that became the foundation for his decision.[6] See Virgen C., 2018 WL 4693954, at *3 (error requiring remand when ALJ fails to make finding that material not seen by medical expert does not reflect material worsening). Nor does the evidence not considered by the SA experts lend itself to a lay analysis – both the 2015 and the 2018 materials are different from the evidence that the SA experts considered. The medical significance of those differences is a matter for interpretation by an examiner with appropriate medical expertise.

A coda: the Commissioner cannot avoid remand by pointing to the ALJ's alternative (though truncated) footnote ruling. The footnote relies on an assumed RFC that the ALJ spun from gossamer based on his lay interpretation of the evidence, excluding the 2018 treating notes, which he ignored. It remains possible that a qualified medical expert might conclude that the ALJ's lay assessment is spot on and that Plaintiff is not disabled. However, with no evidence to support that footnote's RFC, it was error for the ALJ to base his decision on it, even one in the

---

[6] The decision mentions one MSE observation from the 2015 record – "isolated instances of 'helplessness/worthlessness' thought content." Tr. 228. It mentions nothing from the 2018 treating notes.

alternative.  Ledoux, 2018 WL 2932732, at *9-10 (remand required when residual functional capacity unsupported by substantial evidence).

Based on the foregoing, I recommend that the Court remand this case for further proceedings.

### V.     Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be DENIED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 9, 2020